## JONES VS. PARISH.

1. BAILEE WITHOUT REWARD. A bailee without reward, is liable only for gross negligence.

2. NEGLIGENCE. The question of gross negligence is one of fact for the jury, and not of law for the court, it being the duty of the court to explain to the jury what is gross negligence as understood in the law, and the province of the jury to find and apply the facts.

3. BAILEE, DUTY OF. If a bailee undertakes to carry an article from one place to another gratuitously, he is responsible only for gross negligence or a breach of good faith; but if he undertakes to perform gratuitously some service or duty in respect to it, and actually enters upon the execution of the business, he is bound to use a degree of care and attention adequate to its performance; and if, from the want of such care and attention, damage ensues to the other party, he will be liable to the extent of the injury.

4. DEGREE OF CARE REQUIRED. The plaintiff handed a sum of money to the defendant, requesting him to take it to a certain bank and pay it to the cashier, and have it credited upon his note in the bank, and the defendant took the money agreeing to do so; but he handed the money to the bank teller on the street, and it was not paid in at the bank or credited on the note, but was lost to the plaintiff. In an action to recover it, it was *held*, that whether the defendant was liable for the loss did not depend upon whether he was guilty of gross negligence, but whether he used such a degree of care and attention as was fairly adequate to the performance of his undertaking.

5. INSTRUCTIONS. Where all the evidence given in the court below is embraced in the bill of exceptions, from which it appears that a jury would not, under proper instructions, be warranted in finding a differ-

ent verdict, a new trial will not be granted, though the instructions which were given to the jury were erroneous.

6. ERROR. An error which is not prejudicial to the party who complains of it, is no ground for reversal of a judgment.

7. NEW TRIAL — SURPRISE. A new trial will not be granted to a party on the ground of surprise, merely because a witness called by his adversary, testifies to more facts that he believed or supposed he would.

ERROR to the District Court for *Iowa* County.

The case is fully stated in the opinion of the court, and was argued at the July term, 1844, when the chief justice was absent, and the court being unable to agree upon a decision, a re-argument was ordered, and the cause was again argued in 1845, all the judges being present.

*Parley Eaton* and *M. M. Jackson,* for plaintiff in error:

1. The defendant *Jones* was a gratuitous bailee, without reward, and was liable only for gross neglect equivalent to fraud. 1 Bac. Abr. 559; 1 Davis Abr. 704–712; 2 Kent, 559; 2 Black. Com. 453; 7 Cowen, 278; 11 Wend. 25; *Foster v. Essex Bank,* 17 Mass. 479; *Dormer v. Jenkins,* 29 Eng. Com. L. 80; Jones on Bailment, 10–12: 5 Carr. & P. 242.

2. The question whether *Jones* was guilty of gross negligence was a question of fact for the jury, and not of law for the court, and the instructions of the district court on this branch of the case are clearly erroneous. 3 Wend. 418, and cases cited under the first point.

3. The plaintiff could not recover without showing a demand and refusal. 9 Johns. 361.

4. The court should have granted a new trial on the ground of surprise, as shown by the affidavit of Eaton.

*T. P. Burnett,* for defendant in error.

MILLER, J. The defendant in error commenced his action by attachment, against the plaintiff in error, in the district court of Iowa county. The declaration is in assumpsit for money had and received, and the parties went to trial on the general issue.

It was proven on the trial, that the plaintiff said to the defendant and others, that he had just been at the Bank of Mineral Point, and found it locked up or closed; that he had some money he wished to pay into bank, but desired to leave Mineral Point that afternoon; that he then took from his pocket a roll of bank bills, and counted out $600, which, after being counted by the defendant, and others, the plaintiff handed to the defendant and said to him: "*Jones*, I want you to take this money (six hundred dollars) to the bank, and pay it or hand it to Knapp (who was then the cashier thereof), and have it indorsed on my note." *Jones*, the defendant then took the money, and said he would do so. It was also proven, that the plaintiff called on the receivers of the bank, after its affairs had gone into their hands, and wanted to know whether they would allow him a credit of $600, on his note, then in their hands, which amount he alleged had been given to the defendant to pay into the bank; and that the receivers refused to allow such credit. Afterward the plaintiff paid the note in full. Porter Brace, a witness for defendant, proves that sometime in the summer of the year 1841, but what particular time in said summer he did not remember, being on his way to the banking-house, and near the same, the defendant handed him a package or roll of bank notes, remarking at the same time, "here is $600 from *Parish*." The witness, then received the roll or package, as teller of said bank. He also states, that in the ordinary course of business, the amount of said roll or package, would have been credited to the plaintiff, or remained in the bank as a special deposit, subject to the plaintiff's order. How it was disposed of witness does not remember, and cannot state, but has no doubt, that plaintiff had the full benefit of said roll or package in his settlement with Knapp, the cashier. To rebut the testimony of said Brace, it was proven, that in September, 1841, and after the affairs of the bank had gone into the hands of the receivers, the plaintiff asked Brace, if *Jones* had paid any

money for him, to be credited on his note in the bank, to which he replied that plaintiff had paid $10; to which the witness remarked to Brace, that he, Brace, was mistaken, that the $10 were paid by himself (the witness), and were credited on the note in his (witness') presence; Brace then said, that the witness was right, that he paid the $10, and the defendant never paid him any money to be credited on plaintiff's note in bank. Another witness testified, that after the affairs of the bank had gone into the hands of the receivers, Brace was asked by plaintiff, if the defendant had paid to him, on account of the indebtedness of the plaintiff to the bank, the sum of $600; to which said Brace answered, that he had not; but that if it had been paid it had been credited to plaintiff, as he in such matters never trusted any thing to memory, but always put it down on paper.

It did not appear that there was any credit to the plaintiff on the books of the bank, or on the note of the plaintiff in the bank, of the sum of $600. The note was for the sum of $2,203.68.

The court charged the jury, as returned in the bill of exceptions, "that what amounts to gross negligence is a question of law for the court to decide; that is, it is a question of law as to what particular facts amount to or constitute gross negligence; that it was only for the jury to inquire, whether from the testimony in the cause such facts exist. And if the jury believe from the testimony that it was the undertaking of the defendant to deliver the money deposited with him, by plaintiff, to one of the officers of the bank, in the bank, 'and to have it indorsed on the plaintiff's note; and if, instead of taking the money to the bank and having it so indorsed on said note, he (the defendant) handed it to Brace, the teller, on his way to the banking house, and there was no proof of its having reached the bank, and of its being credited on said note, then the defendant was guilty of gross negligence."

The jury returned a verdict for the plaintiff, when the

defendant moved the court for a new trial, which being overruled, judgment was rendered against the defendant.

The law is well settled, that a mere naked or gratuitous bailee, without reward, is only liable for gross negligence. And it is as well understood that the facts proven should be submitted to the jury, whose province it is to determine whether they amount to a case of gross negligence or not. It is the duty of the court to explain to the jury, what is gross negligence, as understood in law ; and the province of the jury to find and apply the facts.

It is understood to have been conceded at the argument, that the entire testimony given in the cause, is embraced in the bill of exceptions ; such being the case, this court is enabled to examine it, in connection with that part of the charge returned, and to decide satisfactorily upon its applicability to the testimony, and whether injustice has been done the defendant.

The plaintiff handed the money to the defendant, with a request to take it to the bank, and pay it or hand it to Knapp the cashier thereof, and have it indorsed on his (the plaintiff's) note, which the defendant promised to do.

This is termed in law, a mandate, which is, where one undertakes, without compensation, to do some act for another in respect to the thing bailed. The labor and service are the principal objects of the parties, and the thing bailed is merely accessorial. If the mandatory merely undertakes to carry the article from one place to another, he is responsible only for gross neglect, or a breach of good faith. But if he undertakes to perform, gratuitously, some work or service relating to it, and actually enters upon the execution of the business, then he is bound to use a degree of diligence and attention suitable to the undertaking, and adequate to the performance of it. If he does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance, and the party thus injured can recover to the extent of the injury. The defendant received this money for the special purpose of

taking it to the bank, paying it to the cashier, and having it indorsed upon the note, which he did not do. It is conceded that he was competent to perform this service or duty, and worthy of being intrusted with the money and the business. Through his inattention to his duty, according to his promise and undertaking, the money was lost to the plaintiff. It now appears evident that this is not a case of a mere gratuitous bailment, without fee or reward, wherein the defendant would only be liable for gross negligence ; but it is a bailment, coupled with the performance of a duty or service in connection with the thing bailed, which when entered upon, required him to use a degree of diligence and attention adequate to the performance of his undertaking. The law was mistaken in this particular by the court, in favor of the defendant. The question of gross negligence was not raised by the evidence. The subjects of inquiry were, whether the defendant received the money for the specific purpose stated, and then, whether he used a degree of diligence and attention adequate to the performance of his undertaking. If these points were found against the defendant, and that the money was lost to the plaintiff, then the defendant was liable. 2 Kent's Com. 570 ; Story on Bailment, 104, 179, 180, 181 ; *Fabens v. Mercantile Bank*, 23 Pick. 330.

It is contended, that from the testimony of Brace it may be inferred that the money was not lost to the plaintiff, and that therefore, the cause should be submittted to another jury. It is certain that the money has never been credited to the plaintiff, on the books of the bank or on the note. If it was handed to Brace in the street, he has not accounted for it satisfactorily. It is the duty of the defendant to account for the money. The roll of notes is traced to him, and probably to his witness Brace, and there it rests. It is not to be pretended that the consideration of Brace's testimony was withdrawn from the jury ; or that the whole charge is returned. From the vague and uncertain testimony of Brace, coupled

with his contradictory statements as proven by other witnesses, we cannot say that it is entitled to such consideration as to induce this court to order a new trial, or to doubt the propriety of the verdict.

It is not every error in the ruling of a court that should require the reversal of a judgment. This court never reverses a judgment for errors clearly unattended with actual prejudice. *Campbell v. Colhoun*, 1 Penna. 140; *Johnston v. Brackbill*, id. 370. A new trial will be granted for the misdirection of the court, although the evidence may have warranted the verdict found, when the chances are equal that the verdict resulted from the misdirection. *Wardell et al. v. Hughes & Moore*, 3 Wend. 418. But this is not such a case. The jury would not be warranted in finding a verdict for the defendant, upon the evidence in this case.

These remarks dispose of the whole case, except the last reason for a new trial, which is as follows:

"Because the said defendant was taken by surprise, by the testimony of Abner Nichols, in this, that the defendant supposed all that would be proven by said Nichols was, that the defendant was to hand the money to one of the officers of the bank, and no more; and also by the introduction of witnesses to discredit and impeach the testimony of Brace, which, had the defendant have known, he would have been prepared with witnesses to rebut." There is certainly nothing in this. A party must use due diligence in the preparation of his case. He may, if he chooses, ascertain what a witness is to prove, and should procure testimony in opposition. It frequently occurs that a witness states more facts than was expected, but it would not do to set aside a verdict for that reason. If such a rule were to prevail, few verdicts would stand. Proof to discredit might have been anticipated, and the defendant should have been prepared to meet it. He does not even give the court to understand the nature or extent of the evidence he could have introduced upon the subject, nor is it alleged that

it was unknown to him at the trial, or that it is newly discovered.

It is ordered that the judgment of the district court be affirmed.

IRVIN, J., *dissenting.*